IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) |
| | ) Bkcy. No. 03-23846-BM |
| J. ALLEN STEEL COMPANY, | ) |
| | ) Chapter 11 |
| Debtor | ) |
| | ) Adversary No. 04-2014-BM |
| | ) |
| OFFICIAL COMMITTEE OF UNSECURED | ) |
| CREDITORS OF J. ALLAN STEEL COMPANY, | ) |
| | ) |
| Plaintiff | ) |
| -vs- | ) |
| | ) Civil Action No.  05-592 |
| | ) |
| NUCOR-YAMATO STEEL COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.


## OPINION
and
## ORDER OF COURT

### SYNOPSIS

Appellant argues that the Bankruptcy Court erred in finding that certain payments made during the preference period did not qualify under the ordinary course defense set forth in 11 U.S.C. § 547(c)(2).  Because I am unable to discern whether the Bankruptcy Court considered certain evidence, this action is remanded for further proceedings.

1

## OPINION

Debtor J. Allan Steel Co. ("J. Allan") processes and distributes various steel products.  Appellant Nucor-Yamato Steel Company ("Nucor-Yamato") manufactures steel and supplied steel to J. Allan for more than fourteen years. On or about March 28, 2003, J. Allan filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code ("the Bankruptcy Code").  The United States Trustee for the Western District of Pennsylvania appointed a committee of unsecured creditors ("the Committee").  The Bankruptcy Court then entered an Order on June 12, 2003, approving J. Allan's Plan of Reorganization, pursuant to which J. Allan assigned to the Committee the right to bring avoidance actions on behalf of J. Allan's estate.

The Committee then initiated the underlying action, seeking to recover $1,024,563.24 in payments made to Nucor-Yamato during the ninety day period before the Petition Date (December 28, 2002 through March 28, 2003). The Bankruptcy Court subsequently granted partial summary judgment in Nucor-Yamato's favor, finding that $187,501.30 of the alleged preference amount qualified under the "new value" defense set forth at 11 U.S.C. § 547(c)(4). The parties then proceeded to trial on the issue of whether the remaining $837,061.96 qualified under the ordinary course defense set forth at 11 U.S.C. § 547(c)(2). Following a one day trial, the Bankruptcy Court issued an Opinion finding that the payments did not so qualify.  Accordingly, the Court entered judgment in favor of the Committee in the amount of $837,061.96 and Nucor-Yamato filed this appeal.

Nucor-Yamato contends that the Bankruptcy Court erred in holding that it did

not prove by a preponderance of evidence that the payments at issue were made in the ordinary course of business between the Debtor and Nucor-Yamato pursuant to 11 U.S.C. § 547(c)(2)(B) and that the payments at issue were made according to ordinary business terms pursuant to 11 U.S.C. § 547(c)(2)(C).[1]

Having reviewed the Bankruptcy Court's Opinion and the underlying record, I conclude that the action must be remanded.  I cannot discern from the Opinion whether the Bankruptcy Court considered several important factors in reaching its decision.  Accordingly, the case is remanded for further proceedings.

## STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy provides that:

> [o]n appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy's judge's judgment, order or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.

Fed. R. Btcy. Proc. 8013.  Thus, a bankruptcy court's legal determinations are reviewed *de novo*, its factual findings for clear error and its exercises of discretion for abuse. See The Official Committee of Unsecured Creditors of New World Pasta Co., 322 B.R. 560, 564-65 (Bankr. M.D. Pa. 2005), citing, In re Martin's Aquarium, Inc., 98 Fed. Appx. 911, 913 (3d Cir. 2004) and In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989) ("[I]t is well settled law that this court applies a clearly erroneous standard

---

[1] Nucor-Yamato initially challenged the Committee's standing to bring the avoidance action, but later withdrew this issue on appeal. See Appelle's Initial Brief, p. 3.

to findings of fact, conducts plenary review of conclusions of law, and must break down mixed questions of fact and law, applying the appropriate standard to each component.").

**ANALYSIS**

Section 547(c)(2) provides, in relevant part:

> (c) The trustee may not avoid under this section a transfer--
> ...
> (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was--
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
> (B) made according to ordinary business terms

11 U.S.C. § 547(c)(2). Here, the parties stipulated and the Bankruptcy Court agreed that the first criteria was satisfied. What remains at issue is whether Nucor-Yamato carried its burden of proving by a preponderance of evidence that the payments were made in the ordinary course of business and according to ordinary business terms.

**(A)    "Ordinary Course of Business"**

The Bankruptcy Court correctly noted that Nucor-Yamato bears the burden of proving by a preponderance of evidence that the payments at issue were made in the ordinary course of business. This is a subjective test, "calling for the Court to consider whether the transfer was ordinary as between the debtor and the creditor." In re First Jersey Securities, Inc., 180 F.3d 504, 512 (3d Cir. 1999). Several factors are relevant to this inquiry, such as: (1) the length of time the parties

4

engaged in the type of dealing at issue; (2) whether the subject transfer was in an amount more than usually paid; (3) whether the payments were tendered in a manner different than previous payments; (4) whether there appears to be an unusual action by the debtor or creditor to collect on or pay debts; and (5) whether the creditor did anything to gain an advantage in light of the debtor's deteriorating financial condition. In re Global Tissue, L..L.C.,302 B.R. 808, 812 (Bankr. D. Del. 2003), see also In re First Jersey Securities, 180 F.3d at 512 and In re Yurika Foods Corp., 888 F.2d 42, 45 (6th Cir. 1989).

The Bankruptcy Court did address the first factor.  It observed that Nucor-Yamato and J. Allan had been engaged in business with each other for fourteen years.  Yet it did not discuss any of the other factors.  There is no discussion of whether the amounts transferred during the preference period were in amounts more than what was usually paid.  Nor does the Court comment on whether the manner of payment differed before and during the preference period.  Similarly, there is no discussion of whether the parties engaged in an unusual action to collect on or pay the debt or whether Nucor-Yamato did anything to take advantage in light of J. Allan's deteriorating financial condition.  I simply cannot determine whether the Bankruptcy Court clearly erred in its factual findings, abused its discretion, or misconstrued the law absent more a more detailed Opinion.

The Bankruptcy Court's decision seems primarily to rest upon the conclusion that Nucor-Yamato's credit manager (Tyler Barger) lacked credibility when she testified that Nucor-Yamato had documentation for only the two preceding years

of the relationship.  The Court also rejected Barger's testimony that the 12 years preceding the two years of documented transactions were similar to the documented years.  Certainly, the Bankruptcy Court is in a better position to judge the credibility of a witness.[2]  Yet even were the Bankruptcy Court to completely discount Barger's testimony regarding the course of the parties' business relationship, the Court did not satisfactorily explain why the two years of documentation regarding the relationship was insufficient to establish an "ordinary course of business." Other courts, including some within this Circuit, have concluded that a payment history of less than 24 months was sufficient to establish an ordinary course of business. See i.e., In re Molded Acoustical Products, Inc., 18 F.3d 217 (3d Cir. 1994) (where the lower court concluded that a payment history of twenty one months prior to a preference period was sufficient to establish an ordinary course of business).  Additionally, other courts have concluded that a partial payment history can be sufficient to establish "ordinary course of business" provided that it predates the period when the debtor became distressed. See McCord v. Venus Foods, 185 B.R. 103, 111-12 (Bankr. E.D. N.Y. 1995) (finding evidence of two years of documentation of a nine year relationship to be sufficient); Grant v. Cosec Int'l. Inc., 230 B.R. 185, 192 (Bankr. M.D. Fla. 1999) (finding that a five year period of documentation of a sixteen year history was sufficient).  The Court does not satisfactorily explain why a twenty-seven month period of documentation predating

---

[2]I note, however, that my review of the record did not disclose any evidence contradicting Barger's testimony.

the preference period is insufficient to establish an ordinary course of business.

This lack of explanation is compounded by the Bankruptcy Court's silence as to the testimony of Frank Quigley, Chief Financial Officer of J. Allan from 1999 until 2003. Quigley confirmed Barger's testimony that Nucor-Yamato did not enter into any different payment arrangements prior to or during the preference period. See Trial Transcript, p. 56. Quigley also agreed that Nucor-Yamato did not put any unusual economic pressure on J. Allan during the preference period. Id, p. 59. Indeed, Quigley acknowledged that nothing significantly different happened during the preference period as compared to the pre-preference period. Id. Thus, Quigley's testimony is directly relevant to several of the factors which bear upon an assessment of the ordinary course of business, yet the Court does not acknowledge the testimony.

In short, then, this action must be remanded for further consideration. On remand, the Bankruptcy Court should discuss whether a twenty-seven month documented history is sufficient to establish an ordinary course of business; whether the transfers were in an amount more than usually paid; whether the payments were tendered in a manner different than were previous payments; whether there appeared to be any unusual action by J. Allan or Nucor-Yamato to pay or to collect on the debts; whether Nucor-Yamato did anything to gain an advantage in light of J. Allan's financial condition; and the impact of Frank Quigley's testimony.

**(B)  "Ordinary Business Terms"**

Section 547(c)(2) is written in the conjunctive.  Thus, to qualify for the safe harbor set forth therein, Nucor-Yamato must also prove by a preponderance of evidence that the payments were made "according to ordinary business terms."  The Third Circuit court has endorsed, with one minor modification, the Seventh Circuit Court's definition of "ordinary business terms":

> "ordinary business terms" refers to the range of terms that encompasses the practices in which firms similar in some general way to the creditor engage, and that only dealings so [unusual] as to fall outside the broad range should be deemed extraordinary and therefore outside the scope of subsection c.

In re Molded Acoustical Products, Inc., 18 F.3d 217, 224 (3d Cir. 1994), quoting, In re Tolona Pizza Prods. Corp., 3 F.3d 1029, 1033 (7th Cir. 1993).  Both the Seventh Circuit court and the Third Circuit court understood that information about the business practices of competitors could be difficult to obtain. See In re Molded Acoustical, 18 F.3d at 224, citing, In re Tolona Pizza, 3 F.3d at 1033.  Thus, while Nucor-Yamato must make some showing, § 547(c)(2)(C) is "quite accommodating" in this regard.

In addition to an "accommodating" approach, the Third Circuit court stresses the importance of considering the duration of the parties' relationship.  The Court instructs:

> we think that the duration of the parties' relationship is logically pertinent to the touchstone of the statutory policies undergirding § 547(c)(2), policies which we must always keep within our sights especially when trying to make sense out of such terse language as is found in § 547(c)(2).  Furthermore, we are persuaded that resort to the length of the parties' relationship will remedy any of

8

the defects otherwise apparent in that section.  The preference provisions are designed not to disturb normal debtor-creditor relationships, but to derail unusual ones which threaten to heighten the likelihood of the debtor filing for bankruptcy at all and, should the contingency materialize, to then disrupt the paramount bankruptcy policy of the equitable treatment of creditors. That much the structure of the statute and its legislative history import. Therefore, when the relationship in question has been cemented long before the onset of insolvency - up through and including the preference period - we should pause and consider carefully before further impairing a creditor whose confident, consistent, ordinary extension of trade credit has given the straitened debtor a fighting chance of sidestepping bankruptcy and continuing in business. ... In short, we think that a trade debt payment made according to longstanding practice between two solvent parties most often does not "prefer" that creditor to the disadvantage of the debtor or other creditors.

In re Molded Acoustical, 18 F.3d at 224-225.

Thus, whether transactions are made according to ordinary business terms is heavily influenced by the parties' relationship.  As stated above, here the parties have had a relationship for more than 10 years.  For the reasons set forth above, the Bankruptcy Court did not adequately discuss the parties' relationship.  Accordingly, I cannot properly review the Bankruptcy Court's decision with respect to "ordinary business terms" unless and until the Bankruptcy Court takes further action with respect to the "ordinary course of business" query.  Once the Bankruptcy Court clarifies its decision with respect to the "ordinary course of business" issue, it should assess whether that decision impacts its conclusion with respect to the "ordinary business terms" decision.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | ) |
| | ) Bkcy. No. 03-23846-BM |
| J. ALLEN STEEL COMPANY, | ) |
| | ) Chapter 11 |
| Debtor | ) |
| _____ | ) Adversary No. 04-2014-BM |
| | ) |
| OFFICIAL COMMITTEE OF UNSECURED | ) |
| CREDITORS OF J. ALLAN STEEL COMPANY, | ) |
| | ) |
| Plaintiff | ) |
| -vs- | ) |
| | ) Civil Action No.  05-592 |
| NUCOR-YAMATO STEEL COMPANY, | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this **8ᵗʰ** day of Decmeber, 2005, after careful consideration, and for the reasons set forth in the accompanying Opinion, it is Ordered that the decision rendered by the Bankruptcy Court is VACATED.  The case is remanded to the Bankruptcy Court for further consideration as outlined in the Opinion.

BY THE COURT:

_____

Donetta W. Ambrose,
Chief U. S. District Judge

PC:  U.S. BANKRUPTCY COURT
ATTN:  HON. BERNARD MARKOVITZ, USBJ

10